UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY JEFFERSON,

                Petitioner,                Case Number 2:12-cv-15189
                                                          Honorable Arthur J. Tarnow

v.

MILLICENT WARREN,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Petitioner Tammy Jefferson has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Kent Circuit Court of first-degree felony-murder, MICH. COMP. LAWS § 750.316(1)(b), with the predicate felony being second-degree vulnerable adult abuse, MICH. COMP. LAWS § 750.145n(2). As a result of her conviction, Petitioner is serving a mandatory life sentence for the murder conviction and 3-to-6 years for the vulnerable adult abuse conviction. The petition raises three claims: 1) there was insufficient evidence presented at trial to sustain Petitioner's convictions, 2) the trial court erred in allowing the prosecutor to offer evidence regarding Petitioner's mistreatment of her surviving child, and 3) the trial court erroneously allowed expert testimony regarding Petitioner's computer use. The Court will deny the petition because the claims are without merit. The Court will grant Petitioner a certificate of appealability with respect to her first claim, but deny one with respect to her other claims. The Court will also grant Petitioner permission to proceed on appeal in forma pauperis.

I. Background

Charges against Petitioner arose when on March 7, 2009, Taryn Jefferson, Petitioner's twenty-one-year-old severely disabled daughter, died. The prosecution alleged that Petitioner, Taryn's sole caregiver, neglected her in the last months of her life leading to her death.

At trial, evidence established that Petitioner's daughter was shaken as a baby by her father and suffered a traumatic brain injury. Since the injury, Petitioner was required to attend to Taryn's basic needs, as she was completely unable to care for herself.

Registered nurse Susan Fillmore testified at trial that she worked at an outpatient clinic in Grand Rapids, where her job was to refill Baclofen pumps, including the pump that was surgically implanted in Taryn Jefferson in 2005. When Petitioner failed to bring Taryn in for a November 11, 2008 appointment, the nurse sent an "alarm" letter to the home. When that brought no response, she called Adult Protective Services.

Petitioner finally brought her daughter in on November 21, and the clinical staff determined that Taryn had lost 31 pounds. Petitioner reported that everyone in the household had been sick. Fillmore made appointments for Taryn to be seen at a hospital, but Petitioner failed to keep them.

Taryn had been a student at the Lincoln Developmental Center. Her teacher stated that she did not attend the school much during the fall of 2008, and in December stopped coming altogether. The school principal sent Petitioner a letter in October of 2008 saying that Taryn would be disenrolled for non-attendance.

School social worker Patty Joynt testified that she was unable to reach Petitioner in September of 2008, and in October, Petitioner told Ms. Joynt that she was trying to get her life back on track and "needed to get back to being a mom again."

Lynn Yondo, the school nurse at Lincoln, testified that she last weighed Taryn in October of 2007, and she weighed 117 pounds. Around this same time, Taryn's half-brother Michael Squires was not attending school regularly.

Grand Rapids Public School truant officer Jeana Young testified that she sent letters to the home and attempted home visits. She did speak with Tammy Jefferson on October 17, 2008, and Petitioner told her that the children had been sick. Michael Squires had 46 unexcused absences between September of 2008 and the end of February of 2009.

John Scheid, a home help worker with the Department of Human Services, conducted a home visit in October of 2008. Taryn looked thinner than on prior visits, but not drastically so, and her mother seemed not to have noticed the extent of the weight loss. He scheduled another interview, but on that date he got no response at the home, so he did not see Taryn again until March 3, 2009, four days before her death. On that date, Taryn looked "gaunt" and her mother said she had a "nasty bug." Petitioner acknowledged that they had missed some medical appointments and said she was having transportation problems. Mr. Scheid did not think Taryn was in "obvious distress" on March 3, and he was going to help reschedule an appointment for her with a primary care physician. Petitioner expressed to him an interest in having Taryn return to school.

Steven Squires testified that he and Petitioner lived together for seven or eight years. After their son Michael was born with spida bifida in 2000, Steven Squires assisted in caring for both children, and even after he left the home he would return to help out. Mr. Squires said that Petitioner was a very good mother until she got a computer in 2006 or 2007. As she spent more time on the computer, she seemed to spend less time caring for the children. Mr. Squires testified that toward the end of Taryn's life, whenever he or Petitioner would try to feed Taryn, Taryn would push the food out of her mouth with her tongue.

Petitioner's friend of twelve years, Nicole Smith, also described Tammy Jefferson as a very good mother. She said that she saw Petitioner three or four times a week and was aware that Taryn was sick in the month before her death.

Using medical records, Detective Eric Wiler of the Wyoming, Michigan Police Department put together a chart of the fluctuations in Taryn's weight between June of 2005 and her death on March 7, 2009. The chart was introduced into evidence and reflects that at the time of her death Taryn weighed 65 pounds.

After Taryn's death, Petitioner moved with Michael Squires to Omaha, Nebraska, to live with her estranged sister Lori Vasquez. Ms. Vasquez testified at trial that she had never known Taryn, and that after Petitioner moved into her Omaha home with Michael, Petitioner needed to be reminded to bathe Michael and change his diaper.

Detective Todd Didion interviewed Petitioner in Omaha on September 29, 2009, and testified that she told him that while she let some of Taryn's medical appointments slide, she never did so for "life and death matters." Petitioner explained that Taryn was sick before she died, and Petitioner's priority became keeping her healthy, while keeping her in school became much less of a priority. Because she was with Taryn everyday, she did not notice the dramatic weight loss in a way a person who saw Taryn less frequently would notice it.

Police seized Ms. Jefferson's computer and monitor, and turned it over to Dr. Earl Fife for examination. Dr. Fife determined that Petitioner had engaged in chat line conversations on 209 different days for an average period of two hours per day, and that for internet usage exclusive of chats, Dr. Fife calculated that the average number of pages per day, as reflected in the computer history file, was 131. That 131 pages did not include repeat visits to the same site, which increased the average number of pages to over 400 per day.

Forensic pathologist Dr. Stephen Cohle testified as an expert witness that he performed an autopsy on Taryn Jefferson on March 7, 2009. He understood that she had suffered from a severe brain injury and cerebral palsy. At the time of her death, Taryn was 4'8" tall, weighed 65 pounds and was filthy. She had an electronic Baclofen pump implanted in her abdomen. There was no evidence of trauma, but her brain was one-half of normal size, which is consistent with a severe head injury. The doctor offered the opinion that Taryn probably would have died eventually of pneumonia or respiratory failure and that she had a reduced life expectancy because of her brain injury.

Taryn had a tiny tumor in her lung, the significance of which was uncertain. She had extensive pressure sores, or ulcers, on her back and buttocks. There was evidence of malnutrition. Dr. Cohle testified that the cause of death was severe head injury and severe neglect.

Petitioner testified at trial that the children had been receiving SSI insurance, and when Taryn turned eighteen, the Family Independence Agency assisted her in signing up for a caregiver program that paid her $900 to care for Taryn. That $900, plus the money from SSI, gave the family a monthly income of $2,000. When Taryn turned eighteen, she was dropped by her pediatrician, and Petitioner was unable to find a primary care doctor who would take her as a Medicaid patient. In the fall of 2008, all three members of the family were experiencing increased illnesses. Petitioner attributed this in part to an unhealthy home environment. There was mold and dampness in their rental home, and the basement sometimes flooded. Ms. Jefferson testified that Taryn "lost a lot of ground."

In the fall of 2008, Petitioner stopped sending Taryn to school. Taryn was over eighteen and was no longer required to go to school, and Ms. Jefferson said that she simply was not able on her own to get both children dressed and ready to leave home every morning. She had to make a choice and decided to keep Taryn at home because Michael was the child who seemed to be getting the

most from the school experience. Petitioner told the jury that by November of 2008, she was struggling to keep herself together. She did miss some appointments for Taryn at a clinic, once when Ms. Jefferson could not get her car started.

Around that time, Petitioner was made aware that Taryn had lost a lot of weight, approximately 30 pounds. She testified that Taryn had lost the ability to chew, and she was putting all of Taryn's food in a blender before trying to feed her. Taryn seemed to have lost all interest in food.

In February of 2009, Taryn was sick and suffering from bed sores. Petitioner moved her from her hard hospital bed to a softer couch. After that, she tried to move Taryn as little as possible because Taryn resisted being moved and would vomit when her mother attempted to move her. Petitioner testified that during the last month of Taryn's life she did not even try to give her a bath and would just wash her face as she lay on the couch in an attempt to make Taryn feel as comfortable as possible.

In the last week of her life, Taryn seemed better and would allow her mother to give her soft food. On the day of Taryn's death, Petitioner heard Taryn making noise through the baby monitor that Petitioner kept with her when she was not in the same room as her children. She gave Taryn a bit of Cream of Wheat and some Milk of Magnesia. Taryn began to struggle to breathe and then collapsed. Ms. Jefferson called 911 and attempted to perform CPR. Medical personnel arrived and tried to revive Taryn, but were unsuccessful.

Following arguments, instructions, and deliberations, the jury returned a verdict of guilty as charged. On March 22, 2010, the court imposed prison terms of mandatory life.

Petitioner filed a claim of appeal in the Michigan Court of Appeals, which she raised her habeas claims. The Michigan Court of Appeals affirmed Jefferson's convictions in an unpublished opinion. *People v. Jefferson*, No. 297790, 2011 WL 2859814, (Mich. Ct. App. July 19, 2011). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims as she had raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Jefferson*, 490 Mich. 912, 805 N.W.2d 433 (2011) (table).

## II. Standard of Review

This habeas petition is reviewed under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the state adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable

7

application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

### III. Discussion

A. Sufficiency of the Evidence

Petitioner first asserts that there was insufficient evidence presented at trial to sustain her convictions. She argues that the prosecutor failed to prove that Petitioner consciously failed to care for Taryn to sustain the vulnerable adult abuse charge. Petitioner also argues that the prosecutor failed to prove that she acted with malice to support that element of murder. Finally, she asserts that

the prosecutor failure to provide sufficient evidence that Petitioner's actions were the proximate cause of Taryn's death. The Michigan Court of Appeals rejected these arguments on the merits.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See *Cavazos v. Smith*, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id*. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

9

The Michigan Court of Appeals rejected Petitioner's sufficiency of the evidence claim as follows:

> Defendant first argues that the evidence was insufficient to support both of her convictions. We disagree. We apply a de novo standard of review when reviewing a sufficiency of the evidence claim. *People v. Hawkins*, 245 Mich. App. 439, 457 (2001). We examine the evidence in a light most favorable to the prosecution to determine whether a rational juror could conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. We resolve evidentiary conflicts in favor of the prosecution. *People v. McRunels*, 237 Mich. App. 168, 181 (1999).
>
> To prove that defendant committed the crime of second-degree vulnerable adult abuse, the prosecutor must establish the following elements beyond a reasonable doubt: (1) the defendant was a caregiver or other person with authority over a vulnerable adult; (2) the victim 25 was a vulnerable adult; (3) the defendant committed a reckless act or reckless failure to act; and (4) the defendant's reckless act or inaction caused serious physical or mental harm to the victim. *People v. DeKorte*, 233 Mich. App. 564, 567; 593 N.W.2d 203 (1999). A "reckless act or reckless failure to act" means "conduct that demonstrates a deliberate disregard for the likelihood that the natural tendency of the act or failure to act is to cause physical harm, serious physical harm, or serious mental harm." MCL 750.145m(p); see also *Id*. at 568. This
> Court has defined "deliberate disregard" as "a conscious decision to ignore the risk of harm that would flow from acting or failing to act." *People v. Hudson*, 241 Mich. App. 268, 280 (2000). To establish the causation requirement, a prosecutor must prove that the defendant's reckless act or inaction actually and proximately caused the victim's harm. *Id*. at 284-285, 285 n 9; *People v. Zak*, 184 Mich. App. 1, 9–14 (1990).
>
> In this case, there is no dispute that defendant was the victim's caregiver and that the victim was a vulnerable adult. Rather, defendant challenges the sufficiency of the evidence supporting the elements of recklessness and causation. Viewing the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence to establish beyond a reasonable doubt that defendant recklessly failed to act, i.e., engaged in conduct demonstrating a deliberate disregard for the likelihood of serious physical harm that the victim would suffer as a result of her failure to act. *DeKorte*, 233 Mich. App. at 567-568. There was evidence that defendant did not bathe the victim and change the victim's diapers as necessary. The skin on the victim's buttocks was "sloughed off." Defendant and the victim's home smelled of urine and feces. The victim had bed sores on her back in 2007 and extensive bed sores at the time of her death in March 2009. From August 2008 until the time of her death, the victim suffered from vomiting and diarrhea. The victim weighed 116 pounds in 2007 and 65 pounds when she died, at which time the

pathologist opined that the victim looked as if she had been starved. The victim's personality and appearance changed from "bubbly" to "sullen." Despite the victim's condition, defendant never took the victim to see a doctor. Defendant first rescheduled and then later missed a doctor's appointment that the Mary Free Bed clinic scheduled for the victim; defendant did not reschedule. And, defendant also missed other medical appointments scheduled for the victim. With respect to causation, we find that the prosecution presented sufficient evidence for a jury to conclude beyond a reasonable doubt that defendant's reckless inaction actually and proximately caused the victim serious physical harm. *Id.* at 567; *Hudson*, 241 Mich. App. at 284-285, 285 n 9. The pathologist concluded that the cause of the victim's death was severe neglect, i.e., she was not provided adequate nutrition and hygiene. The jury could conclude beyond a reasonable doubt that, but for defendant's failure to act for the benefit of the victim's health, the victim would not have died—the victim's bed sores, illness, and malnutrition would have been attended to. *Hudson*, 241 Mich. App. at 285. Moreover, the jury could likewise conclude that it was reasonably foreseeable that defendant's failure to act would cause the victim's death. Id. at 285 n 9.

We reject defendant's contention that she was not the actual and proximate cause of the victim's death because the victim suffered a severe brain injury as an infant, which shortened her life span and made her dependent on defendant. The pathologist testified that he would have expected the victim to live years beyond the date of her death if proper care was provided. Moreover, a defendant takes her victim as she finds her. *People v. Brown*, 197 Mich. App. 448, 451-452 (1992). "[A]ny special susceptibility of the victim to the injury at issue does not constitute an independent cause exonerating defendant." *Id.* at 451.

We also conclude that there was sufficient evidence for a rational jury to find defendant guilty of felony murder. The elements of felony murder are (1) the killing of a human being (2) with the intent to kill, do great bodily harm, or create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, i.e., malice, (3) while committing, attempting to commit, or assisting in the commission of a felony specifically enumerated in M.C.L. 750.316(1)(b). *People v. Gayheart*, 285 Mich. App. 202, 210 (2009).

Defendant only disputes the element requiring malice. In this case, defendant referred to the victim as "her job." As previously discussed, defendant never took the victim to a doctor despite the victim's illness and deteriorating physical condition. And, defendant missed the victim's other medical appointments without rescheduling. Moreover, the evidence illustrated that defendant sheltered the victim from third parties, some of which were actively looking into the victim's well-being. For example, defendant did not respond to inquiries concerning the victim made by the Mary Free Bed clinic, adult protective services, and the victim's school. Defendant also lied to adult protective services about her and the victim's

11

whereabouts. And, the neighbor of the defendant and the victim did not even know who the victim was. Given this evidence, a rational juror could have inferred from the facts and circumstances of the case that defendant acted with malice, i.e., that defendant intended to create a very high risk of death or great bodily harm for the victim and that defendant knew that death or great bodily harm was a probable result of her failure to seek appropriate medical treatment and properly care for the victim. *People v. Nowack*, 462 Mich. 392, 401 (2000); *Gayheart*, 285 Mich App at 210.

*Jefferson*, 2011 WL 2859814, *1-3.

This decision did not involve an unreasonable application of the governing Supreme Court standard. First, with respect to the vulnerable adult abuse charge, viewed most favorably to the prosecution, the evidence allowed the jury to find that Petitioner had a deliberate disregard for the likelihood that her failure to act caused physical harm to Taryn–the disputed element. The evidence allowed the jury to infer beyond a reasonable doubt that Petitioner did not bathe or change Taryn's diapers to the point that the skin on her buttocks "sloughed off." This fact was further supported by evidence that the home smelled of urine and feces. Examination of the victim's body revealed that she had extensive bed sores at the time of her death in March 2009, indicating that Petitioner was not providing care for her daughter. The evidence also indicated that the victim went from 116 pounds in 2007 to a mere 65 pounds when she died. During this period of time the evidence allowed the jury to infer that Petitioner deliberately hid her daughter's deteriorating condition by missing medical appointments and withdrawing her from school. From these facts, a jury could find beyond a reasonable doubt that Petitioner deliberately disregarded her daughter's declining condition because she attempted to hide her condition. More to the point, it was reasonable for the Michigan Court of Appeals to so find in light of the established standard for adjudicating sufficiency of the evidence claims.

The state court's conclusion that the prosecutor presented sufficient evidence to demonstrate malice was likewise not unreasonable. To prove this element, the prosecutor was required to establish that Petitioner created a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. *Gayheart*, 285 Mich. App. at 210. Despite the difficult life circumstances Petitioner found herself in, the evidence viewed most favorably to the prosecution allowed the jury to find that Petitioner nevertheless acted with malice. The medical examiner testified that the victim appeared as though she had been starved, and the extent of her bed sores–some of which extended over two inches deep into body tissue–indicated that she had not been moved for days to weeks. This together with the evidence that Petitioner failed to seek medical attention, and in fact, missed appointments made by others for her daughter, allowed for an inference that Petitioner starved and otherwise completely failed to take care of the Taryn for a period of months. Based on the evidence a jury could therefore find that Petitioner's near total neglect of her daughter created a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.

Finally, Petitioner asserts that the prosecutor failed to prove that her actions were a proximate cause of the victim's death. Petitioner argues that Taryn's severe brain injury was the cause of her death. But the pathologist testified that he would have expected the victim to live years beyond the date of her death if proper care was provided. This testimony alone, if accepted by the jury, sufficed to prove beyond a reasonable doubt that Petitioner's neglect was a proximate cause of her death.

Accordingly, Petitioner is not entitled to habeas relief based on he sufficiency of the evidence claim because the claim was not unreasonably adjudicated by the state courts.

B. Admission of Prior Bad Acts Evidence

Petitioner's second claim asserts that the trial court erred in allowing the prosecutor to present evidence regarding Petitioner's lack of care of her other child to show a common scheme under Michigan Rule of Evidence of 404(b).

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation. See *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988); *Coy v. Renico*, 414 F. Supp. 2d 744, 756 (E.D. Mich. 2006). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F. 3d 363, 370 (6th Cir. 1994).

Petitioner's claim that she was denied a fair trial by the admission of prejudicial evidence regarding the care of her son cannot form the basis for habeas relief. A claim that a state trial court erred under M.R.E. 404(b) by admitting improper "prior bad acts" evidence is non-cognizable on habeas review. See *Bey v. Bagley*, 500 F 3d 514, 519 (6th Cir. 2007); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)(Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state

trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. See *Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to habeas relief on her second claim.

C. Admission of Expert Witness Testimony

Petitioner's final claim asserts that the trial court erred in allowing admission of the expert testimony regarding Petitioner's computer usage. As with Petitioner's second claim, the admission of expert testimony in a state trial also presents a question of state law which does not warrant federal habeas relief unless the evidence violates due process or some other federal constitutional right. See *Keller v. Larkins*, 251 47 F.3d 408, 419 (3rd Cir. 2001). A federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court

precedent showing that admission of that expert witness' testimony on a particular subject violates the federal constitution. See *Wilson v. Parker*, 515 F.3d 682, 705–06 (6th Cir. 2008).

Similarly, a determination as to whether an individual is qualified to give expert testimony involves only a state law evidentiary issue. See *United States ex. rel. Ruddock v. Briley*, 216 F. Supp. 2d 737, 743 (N.D. Ill. 2002); see also *VaquezTorrez v. Dorsey*, 66 F.3d 339, 1995 WL 539575, *1 (10th Cir. 1995).

IV. Conclusion

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. ' 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may

issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. ' 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing ' 2254 Cases, Rule 11(a), 28 U.S.C. foll.' 2254.

Petitioner has demonstrated a substantial showing of the denial of a constitutional right with respect to her first issue. Accordingly, a certificate of appealability will issue as to her first claim. A certificate is not warranted with respect to her other two claims. The Court will grant Petitioner permission to proceed on appeal in forma pauperis. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).

V

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is GRANTED with respsect to Claim I, but DENIED with respect to Petitioner's other claims.

It is further ORDERED that Petitioner may proceed in forma pauperis on appeal.

S/Arthur J. Tarnow  
Arthur J. Tarnow  
Dated: March 9, 2015     Senior United States District Judge

16

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on March 9, 2015, by electronic and/or ordinary mail.

                                         S/Catherine A. Pickles
                                         Judicial Assistant